The Chancellor.
Leggett was a competent witness, and his declarations could not be received for the purpose of disqualifying him. The cases on this subject are collected in Cowen & Hill’s Notes to Phillipp’s Evidence, and show this to be the law; as a witness cannot be permitted to disqualify himself by his own declarations. (1 Cowen Hill's Notes, 258, n. 249.) But the admission of the party calling the witness. *466 that he is interested in his favor, or of facts which show such an interest, is sufficient to exclude the witness, unless his competency is restored by a release. The only question for consideration in this case therefore is, whether the referees were right in rejecting the testimony of the witness altogether, on the ground that he had died after his direct examination had been completed, and before the party against whom he was called had cross-examined him.
This question is not very likely to arise in common law courts, where the Cross-examination of the witness generally immediately follows the direct examination, and in the course of the same sitting. And I have not been able to find any case in which this question has arisen and been decided 'in a court of law. In De Peyster v. The Columbian Insurance Company, (3 Caine's Rep. 85,) the complainant’s principal witness was seized with a fit during his cross-examination, but as neither party asked to have the trial postponed on that account, his evidence went to the jury for what it was worth, without objection. And the only question decided by the coiirt was, that the party calling the witness was not entitled to á new trial on that account. In the case of Cazenove v. Vaughan, (1 Maule & Selw. Rep. 4,) referred to in the opinion of the chief justice, no such question arose. For the witness in that Case was alive and might still have been examined by the plaintiffs, under a commission, if the defendant had not already had an opportunity to cross-examine him and neglected it. The examination in that case had been taken de bene esse in chancery, upon a bill filed there to obtain the testimony of foreign witnesses to be used in courts of law; according to the practice which existed before the common law courts were authorized by statute to issue commissions for that purpose. And what Lord Ellenbbrough said was in reference to the rule of the common law in respect to receiving such depositions. The principle upon which depositions in chancery, taken upon such a bill, were received by the common law courts, was that they were the testimony of witnesses taken in another suit between the same parties; and that the witnesses being dead or out of the juris *467 diction of the court of common law, at the time of the trial there, their depositions in the former suit might be received in evidence, from the necessity of the case, in the same manner as if their testimony had been taken in a former suit between the same parties in a court of common law. But as there was in fact no issue in the court of chancery upon which witnesses could be examined in the ordinary way in that suit, until the defendant had put in his answer, it was formerly doubted whether, by the rules of the common law, the depositions of a witness examined de bene esse in the chancery suit, before answer, could be used in a court of law ; although the defendant had notice of such examination and an opportunity to attend and cross-examine the witness. (See Howard v. Tremaine, 4 Mod. Rep. 146; 1 Show. Rep. 363, and Carth. 265, S. C.; See also T. Raym. Rep. 335; Hard. Rep. 315; and Bull. N. P. 240.) In reference to this disputed question, Lord Ellenborough states the general rule of the common law upon the subject of evidence, to show that it had no application to the question then under consideration, and that the depositions in that case taken de bene esse in chancery, and duly published, might be read in the court of law, although the defendant’s answer had not been put in to the bill in chancery. It is wholly improbable, therefore, that the learned chief justice of the court of king’s bench, or any of his associate judges who concurred in the decision in the case of Cazenove v. Vaughan, intended tp express an opinion upon the question now under consideration; or even thought of such a case. What he states as the general rule of the common law, is one which admits of no doubt, And as the rules of evidence are or ought to be the same in all courts, the same rule is equally applicable to the court of chancery. But general rules are subject to exceptions in particular cases, where the enforcement of the general rule might defeat the ends of justice. Thus, the dying declarations pf a murdered person are received in evidence to prove the commission of the crime, notwithstanding the general rule that no evidence shall be admitted but what is or might be under the examination of both parties. And in Vass’s case, (3 Leigh’s Rep. 786,) the general court of Virginia *468 decided that the answers of the murdered man to three questions tending to shew the guilt of the accused, and the consciousness of the murdered man of bis approaching death, were properly received in evidence; although the dying man was so far gone as not to be able to answer a fourth question which was put to him.
But although the question now under consideration does not appear to have arisen, so as to call for a decision thereof in our common law courts, it has arisen three or four times in the court of chancery. There, from the mode of taking testimony, the cross-examination of the witnesses does not always follow immediately upon the close of their direct examination. The occurrence of the death of a witness before the adverse party has had an opportunity to cross-examine him, must of course have been more frequent in that court, than in those courts where the cross-examination takes place immediately. And, so far as I have been able to ascertain, the decisions have uniformly been, that where the direct examination of the witness was complete, that is, where his testimony on his direct examination was drawn up and read over to him and signed, according to the practice of the court, before his death, the deposition might be read, although he died before the adverse party had an opportunity to cross-examine him.
The earliest case on this subject is that of Lord Arundel v. Arundel, which was decided in the time of Lord Coventry, 1634. (1 Rep. in Ch. 90.) There, a witness who had been examined for the plaintiff, and was to have been cross-examined by the defendant, died before he could be cross-examined. Yet the court ordered his deposition to stand. In O’Callaghan v. Murphy, (2 Sch. & Lef. Rep. 158,) Lord Redesdale allowed the deposition of a witness to be read who had died after his direct examination had been completed, but before his cross-examination could be had. And it appearing from the cross interrogatories that they did not apply to what the witness had testified on his direct examination, nor to impeach his credit, but only to matters which might as well have been proved by others, full credit was given to his deposition, as if his cross- *469 examination had been completed. Lord Redesdale compared it to the case of a witness dropping down dead at the trial at nisi prins, after his direct but before his cross-examination; in which case he thought the party producing the witness would not lose the benefit of the evidence he had already given.
And in the subsequent case of Nolan v. Shannon, (1 Moll. Rep. 157,) which came before Lord Chancellor Hart about thirty years later, where the witness had died the day after his examination in chief, and before he could be cross-examined, the chancellor directed that the deposition should be read at the hearing for whatever it was worth under the circumstances, although no cross-examination could be had. But in allusion to the practice of the court of chancery in requiring the deposition to be read over to the witness, and to be corrected and signed by him at the close of his direct examination, and to the decision of Sir Joseph Jekyll in Copeland v. Stanton, (1 P. Wms. Rep. 414,) he said, if the witness had died before he had signed the deposition, no use would have been made of the testimony.
The decision of the supreme court in Clements v. Benjamin, (12 Johns. Rep. 299,) where the cause was adjourned on account of the sickness of one of the plaintiff’s witnesses, before his cross-examination was completed, only decided that it was the duty of the party calling the witness to procure his attendance to complete his examination at the adjourned day, or to show some reasonable excuse why he was not there. But from the language of the court it is evident that the death of the witness in the meantime would have been considered a reasonable excuse, so as to permit his testimony already given to stand for what it was worth in point of credit. The decision in that case was in accordance with every day’s practice in the common law courts, to require the party calling a witness to compel his attendance after the direct examination is closed, until the adverse party has a reasonable time to cross-examine him. But the decision has no application to the present case, where the adverse party was deprived of the right of cross-examination by a dispensation of Providence, without any fault of the witness, or neglect of the *470 party who had called and examined the witness so far as he ideemed it material to examine him on his part.
The testimony of a witness is not entitled to the same weight as evidence where the adverse party has not had an opportunity to cross-examine him, as it would have had if his examination by both parties had been completed in full; and yet in many cases it is better than secondary evidence, which is frequently received, from necessity, to establish the same facts. Thus, if the only surviving witness to a will should be called as a witness to prove the due execution of the instrument, upon a trial, and after he had, upon his direct examination, testified that he and the other subscribing witnesses, who were then dead, were present when it was executed and published by the testator, who was of sound mind and memory, and that they all subscribed it as witnesses, in the testator’s presence and at his request, and should then drop down dead before he could be cross-examined, the proof of the due execution of the will would be much stronger and more satisfactory than the secondary evidence which the court Avould receive to establish the same fact if this testimony should be rejected. For in that case, all the subscribing witnesses to the will being dead, if the testimony Avhich the Avitness had just given Avas rejected, the party Avishing to prove the due execution of the Avill could do so, by merely calling a Avitness and proving the death and hand-writing of all the subscribing Avitnesses thereto, And the same result might be produced by rejecting the testimony of the subscribing Avitness to a bond or other instrument, or the testimony of a notary who had protested a note, because he had died before his cross-examination. I think, therefore, the decisions upon this question to which I have referred are founded in good sense, and are conducive to the ends of justice. And that the court or jury before which such testimony is used should give to the same such weight and importance as it is entitled to under all the circumstances of the case; and that it was erroneous to reject it altogether. But I admit the rule should be otherwise-where the right to cross-examine the witness has been lost by the fault or negligence of the party calling him, or by the misconduct of the *471 witness in departing from the court without permission, or wilfully neglecting to attend at the time and place to which his examination stands adjourned. For allowing the direct examination to stand for any purpose, in such cases, would lead to abuses.
Here, the testimony which the Witness had given upon his direct examination, was material for the party calling him. And the adverse party, by consenting to an adjournment, ran the risk of the loss of the right of cross-examination, in case the witness should die in the meantime: The party calling the witness also ran the risk df having less weight given to the testimony of his witness, than it would have been entitled to if he had lived and been cross-examined; provided the force of his testimony already given would not haVe been impaired by the further examination of the witness by the adverse party.
For these reasons I think the decision of the referees in rejecting the testimony of Mr. Leggett rvas erroneous in point of law, and that the judgment should be reversed, so that the cause may be sent back and decided Upon all the legal evidence in the case. Upon such rehearing of the Case, the plaintiff in error will of course be permitted to prove what Mr. Leggett swore to on his direct examination, in connection with the fact that he died before the adverse party had an opportunity to cross-examine him.
Barlow, Senator.
The right of cross-examining a witness, and the great value of it, is not denied by any respectable authority. Starkie says i “ The power given to the party against whom evidence is offered, of cross-examining the witness upon whose authority the evidence depends, constitutes a strong test both of the ability and of the willingness of the witness to declare the truth. By this means, the opportunity which the witness had of ascertaining the fact to which he testifies, his abil ity to acquire the requisite knowledge, his powers of memory, his situation with respect to the parties, his motives, are all severally scrutinized and examined; and .under such circumstances it must he very difficult for a witness to interweave a false *472 account so nicely with the truth as to make it consist and agree with all other circumstances of the case.” (1 Stark. Ev. 95, 6, 3d Am. ed.)
But important as this right is, it may be waived by a party expressly or by implication. A party may waive all defence to the most important issue in which he may be interested, let the consequences be what they may.
No objection was interposed to the adjournment, and no suggestion was then made to show that the plaintiff desired or intended to cross-examine Mr. Leggett. It is true, we may say that it was his right, and that it is to be supposed he intended to exercise it, until the contrary appears. But parties many times justly lose rights by taking a course which may be prejudicial to others, if allowed to insist upon them. The defendant comfleted his examination so far as his rights were concerned, and had he offered further to question his witness before a cross-examination, the referees might, in their discretion, have prevented him, and declared the examination closed as. to him. But the plaintiff could, as to himself, have considered it inchoate ; as begun but not completed, and to be perfected or finished by a cross-examination. Still he could waive or deprive himself of the cross-examination by words, acts, or neglect; and leave the testimony introduced as complete and admissible against him.
He certainly had an opportunity to cross-examine, or to insist upon his right so to do, if he saw fit. And “ it is sufficient if the party against whom it [the evidence] is offered has cross-examined, or has had the opportunity of so doing, being legally called upon so to do when the statement was made.” “ If the party might have had the benefit of a cross-examination in the course of a judicial proceeding, it is the same thing as if he had actually availed himself of the opportunity.” (1 Stark. On Ev. 97, 3d Am. ed.)
If the plaintiff had considered it important to cross-examine the witness, and intended to do so, he could have insisted upon it when the adjournment took place, or made it manifest in some way that he should do it at a future time.
*473 If he had taken some early course to secure the attendance of the witness, either by making it the condition of an adjourment that the defendant should have him present, or issuing a subpoena, or declaring that he reserved his privilege, it would have disproved the idea of a waiver which arises from the course he pursued. The defendant had no further use for him, and was under no obligation to subpoena and pay him over again, without which the witness would not have been bound to attend had he lived.
The consent of the plaintiff to the adjournment, in one of its phases, has the appearance of a professional courtesy; but if it were, it can hardly be said that, by way of reward for it, the defendant should lose the benefit of his direct examination. The hazard as to the right of cross-examination should rest upon the one who had it, and saw fit, inadvertently or otherwise, to assent to the delay by which it has been lost, without reserving it.
In this case, the course taken by the plaintiff amounted to a waiver of his right to cross-examine Mr. Leggett, and the testimony given on the direct examination should be deemed complete. I believe there was error, therefore, in disallowing the evidence, and that the judgment should be reversed.
Bockee, Senator.
The question presented for the decision of this court is, whether the referees did right “wholly to overrule, reject and disallow” the testimony of Mr. Leggett, under the circumstances appearing in this case. There is no very conclusive, and binding authority to govern us in the decision of this question. The opinions of judges and the decisions of courts in analogous cases have been somewhat variant, and I conceive we are at liberty to recur to first principles, and to establish such rule as we may deem most reasonable and just. The defendant in error has lost the benefit of the cross-examination of Mr. Leggett by an act of Providence, which neither party could foresee or prevent. Shall we for that reason wholly reject and disallow the testimony given on the direct examination? Where there is no negligence or default on either side, can we imagine any good reason for making one party suffer *474 rather than the other, by the decrees of that Inscrutable Power which gives life and which takes it away ? It must be presumed that the testimony is important to the party who produces the witness on the trial. The benefit of the cross-examination is contingent and uncertain. There was no suggestion in this case that the defendant in error desired to cross-examine the witness till after his death. It is obvious that greater injury will be done by rejecting the testimony than by allowing it. But if the balance was even, why should courts of justice undertake to relieve one party at the expense of the other against those dispensations of Providence which are incident to human affairs ? “As the tree falls, so it must lie.” Why should the death of Mr. Leggett have the retroactive effect to impair and destroy the legal, competent and admissible evidence, given in a court of justice? Is the evidence less true because the witness has been called to the bar Of another and more solemn tribunal ? Courts will, on the principle of necessity, receive the testimony of dying witnesses, even without oath, and where no opportunity of cross-examination can be given-. The same necessity exists where the witness dies after his direct and before his cross-examination. The testimony of the witness ought not to be wholly rejected and disallowed. How much weight shall be given to evidence received under such circumstances, when the opposite party has not had the opportunity of cross-examination, is another and distinct question, depending in each particular case on the nature of the examination, and the character, capacity and intelligence of the witness.
The court helow erred in holding that the referees had the right to disregard the testimony, and I am in favor of reversing the judgment.
Johnson, Senator.
The question iti this case is, did the referees err in the rejection of Mr. Leggett’s testimony ? The supreme court thought not) and the learned chief justice puts his opinion upon the common law rule laid down by Lord Ellenborough in Cazenove v. Vaughan, (1 Maule & Selw. 4,) where his lordship observed: “ The rulé of the common law is, that *475 no evidence shall be admitted but what is or might be under the examination of both parties; and it is agreeable to common sense, that what is imperfect, and, if I may so say, but half an examination, shall not be used in the same way as if it was complete. But if the adverse party has had liberty to cross-examine, and has not exercised it, the case is then the same in effect as if he had cross-examined: otherwise the admissibility of the evidence would be made to depend upon his pleasure, whether he will cross-examine or not.”
Without controverting the rule above stated, it seems to me that the supreme court, as well as the referees, erred in assuming that the evidence of Mr. Leggett was imperfect and incomplete, and that a cross-examination, was desired. If at the time of adjournment the defendant in error did not desire to cross-examine either then or subsequently, there is no foundation for saying that the evidence was imperfect and incomplete, but the case falls within the rule laid down by Lord Bllepborough, that the evidence is the same as if there had been a cross-examination.
It does not appear in the report that the slightest intimation was given by the defendant in error of a desire to cross-examine the witness, until after his death. It cannot be pretended that the defendant had not an opportunity of making known his desire to cross-examine, if he wished; and shall it be presumed he did desire it, and in this way deprive the plaintiff in error of his most important evidence? True, cross-examinations are usual, and they are often of the utmost importance for the purpose of eliciting truth. But it does not follow that in this case a cross-examination was desired, or that it would have resulted in any benefit to either party. Suppose the defendant in error did desire a cross-examination, how is that fact to be ascertained except by what he says or does? Is it too much to require that he should exercise his right at the close of the direct examination, or at least that he should then signify his desire to do so at some future period ? I think not. The plaintiff in error committed no fault, nor did he oppose any obstacle in the way of his adversary; and it seems to me a party who has called and *476 examined a witness should noflose the benefit of his testimony through the want of vigilance on the other side.
I am therefore in favor of a reversal of the judgment of the supreme court.
Senators Jones and Scott also delivered opinions in favor of reversing the judgment of the supreme court; the former concurring with the chancellor, and the latter with Senators Barlow and Johnson.
Senators Putnam and Rhoades delivered opinions in favor of affirming the judgment of the supreme court.
On the question being put, “ Shall this judgment be reversed V the members of the court voted as follows:
For reversal: The Chancellor, and Senators Barlow, Bartlit, Bockee, Burnham, Chamberlin, Faulkner, Johnson, Jones, Lawrence, Lester, Platt, Scott, Smith, Strong and Varney—16.
For affirmance : Senators Backus, Porter, Putnam, Rhoades, Scovil and Works—6.
Judgment reversed.